1  **CLAYEO C. ARNOLD**
   **A Professional Law Corporation**
2  **Clayeo C. Arnold, SBN 65070**
   **Clifford L. Carter, SBN 149621**
3  **Kirk J. Wolden, SBN 138902**
   **608 University Avenue**
4  **Sacramento, CA 95825**
   **Telephone (916) 924-3100**
5  **Fax: (916) 924-1829**

6

7  **Attorney for Plaintiffs**

8

9

10                    **UNITED STATES DISTRICT COURT**

11                    **EASTERN DISTRICT OF CALIFORNIA**

12  MARTIN SMITH, JULIE SMITH,          )    **Case No:**
                                        )
13        Plaintiffs,                   )
                                        )
14  vs.                                 )    **COMPLAINT FOR PERSONAL INJURIES**
                                        )    **AND DEMAND FOR JURY TRIAL**
15  MERCK & CO., INC., and  Does 1      )
    through 25, inclusive,              )
16                                      )
          Defendants.                   )
17  ─────────────────────────          )
                                        )
18          **COMPLAINT AND DEMAND FOR JURY TRIAL**

19

20        Plaintiffs, Martin Smith and Julie Smith, his wife, through their undersigned attorneys

21  CLAYEO C. ARLOND, A Professional Law Corporation, and allege as follows:

22                    **I. JURISDICTION AND VENUE**

23        1.    This Court has jurisdiction pursuant to 28 U.S.C. §§1332, as complete diversity

24  exists between Plaintiff and Defendant.  Plaintiff is a resident of the State of California, and

25  Defendant is incorporated and has as its primary business in the State of New Jersey.  The

26  amount in controversy, exclusive of interest and costs, exceeds $75,000.

27

28

                                        1

1    2.    Venue is proper within this district pursuant to  Case Management Order No. 3,

2  filed November 1, 2006, signed by John F. Keenan, allowing Fosamax- related cases to be filed

3  directly in the Southern District of New York.

4    3.    Plaintiff, Carmen Wilson, specifically demands a jury trial.

5                                II.  **PARTIES**

6    4.    Plaintiff Martin Smith was born June 12, 1937.  At all relevant times Plaintiff was

7  a resident of Weimar, California, and used FOSAMAX from July,

8  2000 until January, 2007.  Martin Smith  was married to Julie Smith at all times material to this

9  action.

10    5.    Defendant is a corporation organized and existing under the laws of the State of

11  New Jersey, with its principal place of business in New Jersey.  The Defendant's registered

12  office is at 820 Bear Tavern Road, City of West Trenton, Mercer County, New Jersey.

13    6.    Defendant was at all relevant times authorized to conduct business in the State

14  of California and the State of New York.

15    7.    Defendant has regularly transacted business in the State of California and the

16  State of New York and continues to do so.

17    8.    At all relevant times Defendant, through its agents, servants, employees and

18  apparent agents was the designer, manufacturer, marketer, distributor and seller of FOSAMAX,

19  a bisphosphonate drug used primarily to mitigate or reverse the effects of osteoporosis.

20    9.    Defendant, either directly or through its agents, apparent agents, servants or

21  employees, at all relevant times, sold and distributed FOSAMAX in the State of California for

22  the treatment of pain and inflammation.

23    10.    Defendant derives substantial revenue from pharmaceutical products used or

24  consumed in the State of California and in the State of New York.

25    11.    Defendant expected, or should have expected, that its business activities could

26  or would have consequences within the State of California and in the State of New York.

27                          III. **SUMMARY OF THE CASE**

28

12.    Defendant, either directly or through its agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed and sold FOSAMAX for the treatment of osteoporosis, Paget's Disease, and other off-label uses.

13.    As a result of the defective nature of FOSAMAX, persons who were prescribed and ingested FOSAMAX, including Plaintiff Martin Smith, have suffered and may continue to suffer severe and permanent personal injuries to the jaw bone, including osteonecrosis of the jaw and other diagnoses of irreversible damage to the jaw.

14.    Defendant concealed its knowledge of FOSAMAX's unreasonably dangerous risks from Plaintiff Martin Smith, other consumers, and the medical community.

15.    Defendant failed to conduct adequate and sufficient post-marketing surveillance of FOSAMAX after it began marketing, advertising, distributing, and selling the drug.

16.    As a result of Defendant's actions and inaction, Plaintiff Martin Smith was injured due to her ingestion of FOSAMAX, which has caused and will continue to cause Plaintiffs' various injuries and damages.  Plaintiffs accordingly seek compensatory damages.

## IV.  FACTUAL BACKGROUND

17.    At all relevant times Defendant was responsible for, or involved in, designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX.

18.    In September 1995, the United States Food and Drug Administration ("FDA") approved Merck's compound alendronate, which is marketed by Merck as FOSAMAX, for various uses, including the treatment of osteoporosis and Paget's Disease.

19.    FOSAMAX falls within a class of drugs known as bisphosphonates. Bisphosphonates are used for treating bone conditions such as osteoporosis and Paget's disease.  Other drugs within this class such as Aredia and Zometa are also used as chemotherapy and as adjunct chemotherapy but are not indicated for use in non-cancerous conditions such as osteoporosis.

20.    There are two classes of bisphosphonates: the N-containing (nitrogenous) and non-N-containing (non-nitrogenous) bisphosphonates. The nitrogenous bisphophonates

3

1  include the following: pamidronate (Aredia); ibandronate (Bondronat); and alendronate

2  (FOSAMAX). The non-nitrogenous bisphosphonates include the following: etridonate

3  (Didronel); clodronate (Bonefos and Loron); and tiludronate (Skelid).  Alendronate, like the

4  others, contains a nitrogen atom, whereas etridonate, clodronate, and tiludronate do not. The

5  PDR for FOSAMAX confirms that the molecule contains a nitrogen atom.

6         21.    Throughout the 1990s and 2000s, medical articles and studies appeared

7  reporting the frequent and common occurrence of osteonecrosis of the jaw within the

8  nitrogenous bisphosphonates used for chemotherapy.  As with its reported and acknowledged

9  side effects concerning irritation, erosion, and inflammation of the upper gastrointestinal tract,

10  Merck knew or should have know that FOSAMAX, as a nitrogenous bisphosphonate, shared a

11  similar adverse event profiles to the other drugs within this specific subclass of

12  bisphosphonates (i.e., those containing nitrogen).

13         22.    Merck knew and or should have known that bisphosphonates, including

14  FOSAMAX,  inhibit endothelial cell function.  Similarly, Merck knew or should have known that

15  Bisphosponates also inhibit vascularization of the affected area and induce ischemic changes

16  specific to patients mandibles (lower jaws) and maxillae (upper jaws) and that these ischemic

17  changes appear to be cumulative in nature.

18         23.    Merck also knew or should have known that these factors combine to create a

19  compromised vascular supply in the affected area.  As a result, a minor injury or disease can

20  turning into a non-healing wound.  That in turn can progress to widespread necrosis (bone

21  death) and osteomyelitis (inflammation of bone marrow).

22         24.    Dentists are now being advised by state dental associations to refrain from using

23  any invasive procedure (such as drilling a cavity) for any patient on FOSAMAX.

24         25.    Once the osteonecrosis begins and becomes symptomatic, it is very difficult to

25  treat and is not reversible.

26         26.    Shortly after Defendant began selling FOSAMAX, reports of osteonecrosis of the

27  jaw and other dental complications among users began surfacing, indicating that FOSAMAX

28  shared the class effects of the other nitrogenous bisphosphonates. Despite this knowledge,

1   Defendant failed to implement further study  risk of osteonecrosis of the jaw relative to

2   FOSAMAX.  Rather than evaluating and verifying the safety of FOSAMAX with respect to

3   osteonecrosis of the jaw, Defendant proposed further uses of FOSAMAX, such as FOSAMAX-D,

4   and sought to extend the exclusivity period of FOSAMAX through 2018.

5        27.    Osteonecrosis of the jaw is a serious medical event and can result in severe

6   disability and death.

7        28.    Since FOSAMAX was released, the FDA has received a number of reports

8   osteonecrosis of the jaw among users of FOSAMAX.

9        29.    On August 25, 2004, the United States Food & Drug Administration ("FDA")

10  posted its ODS Postmarketing Safety Review on bisphosphonates - - specifically pamidronate

11  (Aredia), zoledronic acid (Zometa), risedronate (Actonel), and alendronate (FOSAMAX).  This

12  was an epidemiologic  review of the FDA adverse events database conducted by the FDA's

13  Division of Drug Risk Evaluation.

14       30.    As  a result of the FDA Review, the FDA observed that the risk of osteonecrosis

15  of the jaw was not confined to bisphosphonates used for chemotherapy.  The FDA's review

16  indicated that the osteonecrosis of the jaw was a class effect which specifically extended to

17  the oral bisphosphonate, FOSAMAX.

18       31.    As a result, the FDA recommended and stated that the labeling for FOSAMAX

19  should be amended by Merck to specifically warn about the risk of osteonecrosis of the jaw.

20  Merck has refused to accede to the FDA's request and, to this day, still does not warn of the

21  risk of osteonecrosis of the jaw in its FOSAMAX labeling.

22       32.    Rather than warn patients, and despite knowledge known by Defendant about

23  increased risk of osteonecrosis of the jaw  on patients using FOSAMAX, Defendant continues to

24  defend FOSAMAX and minimize unfavorable findings.

25       33.    FOSAMAX is one of Defendant's top selling drugs.  Averaging more than $3

26  billion a year in sales.

27

28

5

34.    Consumers, including Plaintiff Martin Smith, who have used FOSAMAX for treatment of osteoporosis, have several alternative safer products available to treat the conditions.

35.    Defendant knew of the significant risk of dental and oral complications caused by ingestion of FOSAMAX, but Defendant did not adequately and sufficiently warn consumers, including Plaintiff Martin Smith, or the medical community, of such risks.

36.    As a direct result, Plaintiff Martin Smith  was prescribed FOSAMAX and has been permanently and severely injured, having suffered serious consequences from the ingestion of FOSAMAX.  Plaintiff Martin Smith requires and will in the future require ongoing medical care and treatment.

37.    Plaintiff Martin Smith has suffered from mental anguish from the knowledge that Plaintiff will have life-long complications as a result of the injuries Plaintiff sustained from the use of FOSAMAX.

38.    Plaintiff Martin Smith was prescribed and began taking FOSAMAX in 2000.

39.    Plaintiff used FOSAMAX as prescribed and in a foreseeable manner.

40.    As a direct and proximate result of using FOSAMAX, Plaintiff suffered severe personal injury to the jaw.

41.    Plaintiff, as a direct and proximate result of using FOSAMAX, suffered severe mental and physical pain and suffering and has sustained permanent injuries and emotional distress.

42.    Plaintiff used FOSAMAX which had been provided to her in a condition that was substantially the same as the condition in which it was manufactured and sold.

43.    Plaintiff would not have used FOSAMAX had Defendant properly disclosed the risks associated with the drug.  Alternatively, Plaintiff would have known the precursor events of osteonecrosis of the jaw and would have been able to avoid the clinical manifestation of the symptoms as they currently exist.

44.    Defendant, through its affirmative misrepresentations and omissions, actively concealed from Plaintiff and her physicians the true and significant risks associated with taking

6

1  FOSAMAX.  The running of any applicable statute of limitations has been tolled by reason of

2  Defendant's fraudulent concealment.

3      45.    As a result of Defendant's actions, Plaintiff and her prescribing physicians were

4  unaware, and could not have reasonably known or have learned through reasonable diligence,

5  that Plaintiff had been exposed to the risks identified in this complaint, and that those risks

6  were the direct and proximate result of Defendant's acts, omissions, and misrepresentations.

7                           **COUNTS**

8                    COUNT I:  NEGLIGENCE

9      46.    Plaintiffs re-allege the above as if fully set forth herein.

10     47.    Defendant owed Plaintiff, Martin Smith, and other consumers, a duty to exercise

11  reasonable care when designing, manufacturing, marketing, advertising, distributing, and

12  selling FOSAMAX.

13     48.    Defendant failed to exercise due care under the circumstances and therefore

14  breached this duty by:

15     a.  failing to properly and thoroughly test FOSAMAX before releasing the drug to

16  market;

17     b.  failing to properly and throughly analyze the data resulting from the pre-marketing

18  tests of FOSAMAX;

19     c.  failing to conduct sufficient post-market testing and surveillance of FOSAMAX;

20     d.  designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX

21  to consumers, including Plaintiff, without an adequate warning of the significant and

22  dangerous risks of FOSAMAX and without proper instructions to avoid the harm which could

23  foreseeably occur as a result of using the drug;

24     e.  failing to exercise due care when advertising and promoting FOSAMAX; and

25     f.  negligently continuing to manufacture, market, advertise, and distribute FOSAMAX

26  after Defendant knew or should have known of its adverse effects.

27

28

1    49.    As a direct and proximate consequence of Defendant's actions, omissions, and

2  misrepresentations, Plaintiff Martin Smith sustained significant and permanent injury of the

3  jaw.  In addition, Plaintiff required and will continue to require healthcare and services.

4  Plaintiff has incurred and will continue to incur medical and related expenses.  Plaintiff also has

5  suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished

6  quality of life, increased risk of premature death, aggravation of preexisting conditions and

7  activation of latent conditions, and other losses and damages.  Plaintiff's direct medical losses

8  and costs include care for hospitalization, physician care, monitoring, treatment, medications,

9  and supplies.  Plaintiff has incurred and will continue to incur mental and physical pain and

10  suffering and loss of wages and wage-earning capacity.

11    50.    Defendant's conduct as described above was committed with knowing,

12  conscious, wanton, willful, and deliberate disregard for the value of human life and

13  the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to

14  punitive damages so as to punish Defendant and deter it from similar conduct in the

15  future.

16    51.    Plaintiff Martin Smith' spouse, Julie Smith, sustained a loss of

17  consortium as a result of the injuries and damages sustained by his wife incident to

18  the use of FOSAMAX.  His damages include, but are not limited to, a loss of society,

19  companionship, society, services, support, and care.  His losses are permanent and

20  continuing in nature.

21

22

23    COUNT II:  STRICT LIABILITY

24    52.    Plaintiffs re-allege the above.

25    53.    Defendant manufactured, sold, distributed, marketed, and/or supplied

26  FOSAMAX in a defective and unreasonably dangerous condition to consumers,

27  including Plaintiff Martin Smith.

28

54.    Defendant designed, manufactured, sold, distributed, supplied, marketed, and/or promoted FOSAMAX, which was expected to reach and did in fact reach consumers, including Plaintiff, without substantial change in the condition in which it was manufactured and sold by Defendant.

55.    Plaintiff used FOSAMAX as prescribed and in a manner normally intended, recommended, promoted, and marketed by Defendant.

56.    FOSAMAX failed to perform safely when used by ordinary consumers, including Plaintiff, including when it was used as intended and in a reasonably foreseeable manner.

57.    FOSAMAX was defective in its design and was unreasonably dangerous in that its unforeseeable risks exceeded the benefits associated with its design or formulation.

58.    FOSAMAX was defective in design or formulation in that it posed a greater likelihood of injury than other similar medications and was more dangerous than an ordinary consumer could reasonably foresee or anticipate.

59.    FOSAMAX was defective in its design and was unreasonably dangerous in that it neither bore nor was packaged with nor accompanied by warnings adequate to alert consumers, including Plaintiff, of the risks described herein, including, but not limited to, the risk of osteonecrosis of the jaw.

60.    Although Defendant knew or should have known of the defective nature of FOSAMAX, it continued to design, manufacture, market, and sell FOSAMAX so as to maximize sales and profits at the expense of the public health and safety. By so acting, Defendant acted with conscious and deliberate disregard of the foreseeable harm caused by FOSAMAX.

61.    Plaintiff could not, through the exercise of reasonable care, have discovered FOSAMAX's defects or perceived the dangers posed by the drug.

62.    As a direct and proximate consequence of Defendant's conduct, Plaintiff Martin Smith sustained significant and permanent injury of the jaw.  In

9

1   addition, Plaintiff required and will continue to require healthcare. Plaintiff has

2   incurred and will continue to incur medical and related expenses. Plaintiff also has

3   suffered and will continue to suffer diminished capacity for the enjoyment of life, a

4   diminished quality of life, increased risk of premature death, aggravation of

5   preexisting conditions and activation of latent conditions, and other losses and

6   damages. Plaintiff's direct medical losses and costs include care for hospitalization,

7   physician care, monitoring, treatment, medications, and supplies. Plaintiff has

8   incurred and will continue to incur mental and physical pain and suffering and loss of

9   wages and wage-earning capacity.

10       63.    Defendant's conduct as described above was committed with knowing,

11   conscious, wanton, willful, and deliberate disregard for the value of human life and

12   the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to

13   punitive damages so as to punish Defendant and deter it from similar conduct in the

14   future.

15       64.    Plaintiff Martin Smith' spouse, Julie Smith, sustained a loss of

16   consortium as a result of the injuries and damages sustained by his wife incident to

17   the use of FOSAMAX. His damages include, but are not limited to, a loss of society,

18   companionship, society, services, support, and care. His losses are permanent and

19   continuing in nature.

20           COUNT III:  BREACH OF EXPRESS WARRANTY

21       65.    Plaintiffs re-allege the above.

22       66.    Defendant expressly represented to Plaintiff Martin Smith and other

23   consumers and the medical community that FOSAMAX was safe and fit for its

24   intended purposes, that it was of merchantable quality, that it did not produce any

25   dangerous side effects, and that it was adequately tested.

26       67.    FOSAMAX does not conform to Defendant's express representations

27   because it is not safe, has numerous and serious side effects, and causes severe

28   and permanent injuries.

68.    At all relevant times FOSAMAX did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

69.    Plaintiff Martin Smith, other consumers, and the medical community relied upon Defendant's express warranties.

70.    As a direct and proximate result of Defendant's actions, Plaintiff Martin Smith sustained serious significant and permanent injury of the jaw.  In addition, Plaintiff required and will continue to require healthcare and services.  Plaintiff has incurred and will continue to incur medical and related expenses.  Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.  Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies.  Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

71.    Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

72.    Plaintiff Martin Smith's spouse, Julie Smith, sustained a loss of consortium as a result of the injuries and damages sustained by his wife incident to the use of FOSAMAX.  His damages include, but are not limited to, a loss of society, companionship, society, services, support, and care.  His losses are permanent and continuing in nature

<u>COUNT IV:  BREACH OF IMPLIED WARRANTY</u>

73.    Plaintiffs re-allege the above paragraphs.

11

1    74.    Defendant manufactured, distributed, advertised, promoted, and sold

2    FOSAMAX.

3    75.    At all relevant times, Defendant knew of the use for which FOSAMAX

4    was intended and impliedly warranted the product to be of merchantable quality and

5    safe and fit for such use.

6    76.    Defendant was aware that consumers, including Plaintiff Martin Smith,

7    would use FOSAMAX for treatment of osteoporosis and for other purposes.

8    77.    Plaintiff and the medical community reasonably relied upon the

9    judgment and sensibility of Merck to sell FOSAMAX only if it was indeed of

10    merchantable quality and safe and fit for its intended use.

11    78.    Defendant breached its implied warranty to consumers, including

12    Plaintiff; FOSAMAX was not of merchantable quality or safe and fit for its intended

13    use.

14    79.    Consumers, including Plaintiff, and the medical community, reasonably

15    relied upon Defendant's implied warranty for FOSAMAX.

16    80.    FOSAMAX reached consumers without substantial change in the

17    condition in which it was manufactured and sold by Defendant.

18    81.    As a direct and proximate result of Defendant's action, Plaintiff Martin

19    Smith sustained significant and permanent injury of the jaw.  In addition, Plaintiff

20    required and will continue to require healthcare and services.  Plaintiff has incurred

21    and will continue to incur medical and related expenses.  Plaintiff also has suffered

22    and will continue to suffer diminished capacity for the enjoyment of life, a

23    diminished quality of life, increased risk of premature death, aggravation of

24    preexisting conditions and activation of latent conditions, and other losses and

25    damages.  Plaintiff's direct medical losses and costs include care for hospitalization,

26    physician care, monitoring, treatment, medications, and supplies.  Plaintiff has

27    incurred and will continue to incur mental and physical pain and suffering and loss of

28    wages and wage-earning capacity.

82. Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

83. Plaintiff Martin Smith' spouse, Julie Smith, sustained a loss of consortium as a result of the injuries and damages sustained by his wife incident to the use of FOSAMAX. His damages include, but are not limited to, a loss of society, companionship, society, services, support, and care. His losses are permanent and continuing in nature

## COUNT V:  FRAUDULENT MISREPRESENTATION

84. Plaintiffs re-allege the above paragraphs.

85. Defendant made fraudulent misrepresentations with respect to FOSAMAX in the following particulars:

a. Defendant represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that FOSAMAX had been tested and found to be safe and effective for the treatment of pain and inflammation; and

b. Defendant represented that FOSAMAX was safer than other alternative medications.

86. Defendant knew that its representations were false, yet it willfully, wantonly, and recklessly disregarded its obligation to provide truthful representations regarding the safety and risk of FOSAMAX to consumers, including Plaintiff, and the medical community.

87. The representations were made by Defendant with the intent that doctors and patients, including Plaintiff, rely upon them.

1      88.    Defendant's representations were made with the intent of defrauding

2 and deceiving Plaintiff, other consumers, and the medical community to induce and

3 encourage the sale of FOSAMAX.

4      89.    Plaintiff Martin Smith, Plaintiff's doctors, and others relied upon the

5 representations.

6      90.    Defendant's fraudulent representations evinced its callous, reckless,

7 willful, and depraved indifference to the health, safety, and welfare of consumers,

8 including Plaintiff.

9      91.    As a direct and proximate result, Plaintiff Martin Smith sustained

10 significant and permanent injury of the jaw.  In addition, Plaintiff required and will

11 continue to require healthcare and services.  Plaintiff has incurred and will continue

12 to incur medical and related expenses.  Plaintiff also has suffered and will continue

13 to suffer diminished capacity for the enjoyment of life, a diminished quality of life,

14 increased risk of premature death, aggravation of preexisting conditions and

15 activation of latent conditions, and other losses and damages.  Plaintiff's direct

16 medical losses and costs include care for hospitalization, physician care, monitoring,

17 treatment, medications, and supplies.  Plaintiff has incurred and will continue to

18 incur mental and physical pain and suffering and loss of wages and wage-earning

19 capacity.

20      92.    Defendant's conduct as described above was committed with knowing,

21 conscious, wanton, willful, and deliberate disregard for the value of human life and

22 the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to

23 punitive damages so as to punish Defendant and deter it from similar conduct in the

24 future.

25      93.    Plaintiff Martin Smith' spouse, Julie Smith, sustained a loss of

26 consortium as a result of the injuries and damages sustained by his wife incident to

27 the use of FOSAMAX.  His damages include, but are not limited to, a loss of society,

28

1  companionship, society, services, support, and care.  His losses are permanent and

2  continuing in nature

3  <u>COUNT VI:  FRAUDULENT CONCEALMENT</u>

4  94.    Plaintiffs re-allege the above paragraphs.

5  95.    Defendant fraudulently concealed information with respect to

6  FOSAMAX in the following particulars:

7  a.  Defendant represented through its labeling, advertising, marketing

8  materials, detail persons, seminar presentations, publications, notice letters, and

9  regulatory submissions that FOSAMAX was safe and fraudulently withheld and

10  concealed information about the substantial risks of using FOSAMAX; and

11  b.  Defendant represented that FOSAMAX was safer than other alternative

12  medications and fraudulently concealed information which demonstrated that

13  FOSAMAX was not safer than alternatives available on the market.

14  96.    Defendant had sole access to material facts concerning the dangers

15  and unreasonable risks of FOSAMAX.

16  97.    The concealment of information by Defendant about the risks of

17  FOSAMAX was intentional, and the representations made by Defendant were known

18  by Defendant to be false.

19  98.    The concealment of information and the misrepresentations about

20  FOSAMAX were made by Defendant with the intent that doctors and patients,

21  including Plaintiff, rely upon them.

22  99.    Plaintiff Martin Smith, Plaintiff's doctors, and others relied upon the

23  representations and were unaware of the substantial dental and oral risks of

24  FOSAMAX which Defendant concealed from Plaintiff's doctors and Plaintiff.

25  100.  As a direct and proximate result of Defendant's fraudulent concealment

26  and  misrepresentation, Plaintiff Martin Smith suffered significant and permanent

27  injury of the jaw and was caused to suffer severe and permanent injuries, including

28  pain and mental and physical anguish and suffering, including a diminished capacity

1 | for the enjoyment of life, aggravation of preexisting conditions and activation of
2 | latent conditions, and a fear of developing other harmful conditions or problems as a
3 | result of the injury.  Plaintiff has suffered and will continue to suffer a loss of wages
4 | and wage-earning capacity and has incurred expense for medical care and treatment
5 | due to the injuries caused by FOSAMAX.

6 |     101.    Defendant's conduct as described above was committed with knowing,
7 | conscious, wanton, willful, and deliberate disregard for the value of human life and
8 | the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to
9 | punitive damages so as to punish Defendant and deter it from similar conduct in the
10 | future.

11 |     102.    Plaintiff Martin Smith' spouse, Julie Smith, sustained a loss of
12 | consortium as a result of the injuries and damages sustained by his wife incident to
13 | the use of FOSAMAX.  His damages include, but are not limited to, a loss of society,
14 | companionship, society, services, support, and care.  His losses are permanent and
15 | continuing in nature

16 | <center>GLOBAL PRAYER FOR RELIEF</center>

17 | WHEREFORE, Plaintiffs demand judgment against Defendant, as follows:
18 |     a.  compensatory damages on each cause of action;
19 |     b.  punitive damages on each cause of action;
20 |     c.  reasonable attorneys' fees where recoverable;
21 |     d.  costs of this action; and
22 |     e.  such other additional and further relief as the Court may deem
23 |     necessary, appropriate, and just.

24
25
26
27
28

<center>16</center>

1

## VIII.  DEMAND FOR JURY TRIAL

2
Plaintiff demands a trial by jury on all counts and issues so triable.

3

4
Date: <u>August 7, 2007</u>                    Respectfully submitted

5

6
                                        <u>/s/ - CLIFFORD L. CARTER</u>
                                        CLIFFORD L. CARTER
7
                                        Attorney for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17